FILED

10/30/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 25, 2017

## STATE OF TENNESSEE v. STEVEN DARE STEELMAN, JR.

**Appeal from the Criminal Court for Knox County**
**No. 105752      Steven W. Sword, Judge**

_____

### No. E2017-00016-CCA-R3-CD

_____

The Defendant, Steven Dare Steelman, Jr., was convicted by a Knox County Criminal Court jury of aggravated vehicular homicide, vehicular homicide by intoxication, vehicular homicide by reckless conduct, vehicular assault, reckless endangerment with a deadly weapon, third offense driving under the influence (DUI) per se, third offense DUI, driving on a revoked license after two prior DUI convictions, and failure to provide proof of financial responsibility. *See* T.C.A. §§ 39-13-218 (2014) (aggravated vehicular homicide), 39-13-213 (2014) (amended 2015) (vehicular homicide by intoxication or vehicular homicide by reckless conduct), 39-13-106 (2014) (amended 2015) (vehicular assault), 39-13-103 (Supp. 2014) (amended 2015) (reckless endangerment with a deadly weapon), 55-10-401 (2012) (amended 2013, 2015) (third offense DUI per se), 55-10-401 (2012) (amended 2013, 2015) (third offense DUI), 55-50-504 (2012) (amended 2016) (driving on a revoked license after two prior DUI convictions), 55-12-139 (Supp. 2014) (amended 2015) (failure to provide proof of financial responsibility). The trial court merged the vehicular homicide by intoxication and vehicular homicide by reckless conduct convictions with the aggravated vehicular homicide conviction. The court merged the third offense DUI conviction with the third offense DUI per se conviction. The court sentenced the Defendant to an effective thirty-two years' confinement. On appeal, the Defendant contends that (1) the evidence is insufficient to support his convictions for aggravated vehicular homicide and vehicular assault, (2) the trial court should have merged the reckless endangerment with a deadly weapon and vehicular assault convictions, and (3) the trial court erred during sentencing. Although we affirm the Defendant's convictions, we remand the case to the trial court for the entry of corrected judgments reflecting the merger of the third offense DUI per se conviction with the vehicular assault conviction.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments Affirmed in Part; Case
Remanded for Entry of Corrected Judgments**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and J. ROSS DYER, JJ., joined.

J. Liddell Kirk (on appeal) Keith Lieberman (at trial), Knoxville, Tennessee, for the appellant, Steven Dare Steelman, Jr.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme Allen, District Attorney General; and Joe Welker and Gary Eshbaugh, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This appeal arises from a car crash that occurred around noon on November 23, 2014, in which the Defendant's son was killed. Knox County Sheriff's Office (KCSO) Detective Steven Sanders testified that he responded to the crash and that he observed a car with front-end and passenger-side damage. Detective Sanders saw debris along the side of the road, around a tree, and near a telephone pole. Detective Sanders stated that the Defendant was the driver of the car and that two children were passengers. Detective Sanders said that the Defendant was not injured. Detective Sanders stated that one of the children was alert but that the other child was nonresponsive and died within one hour. On cross-examination, Detective Sanders testified that the Defendant told him that he swerved to avoid an oncoming vehicle, which caused the crash.

Nathan Lawson, the Defendant's nephew, testified that he was age twelve at the time of trial and that he and his cousin, Steven Hounschell,[1] were in a car driven by the Defendant when it crashed. Mr. Lawson said that he and Mr. Hounschell got into the car with the Defendant to go to the grocery store. Mr. Lawson stated that he was sitting in the backseat behind the front passenger seat. Mr. Lawson said that he felt a bump and heard tires spinning and that the car "crashed." Mr. Lawson stated that he did not see another vehicle.

Mr. Lawson testified that after the crash, the Defendant told him to unbuckle his seatbelt and get out of the car. Mr. Lawson said that he and the Defendant were "trying to help [Mr. Hounschell breathe] again." Mr. Lawson stated that he hurt his back in the crash and that the Defendant told him to lie on the ground. Mr. Lawson said that he was taken to the hospital, that he had three spinal fractures, and that he stayed in the hospital for one day. Mr. Lawson stated that he wore a neck brace for approximately one to two months and that doctors told him he would have back pain for the remainder of his life.

---

[1] The indictment and autopsy report state that the victim's name was "Steven Hounschell." The death certificate states that the victim's name was "Steven Dare Hounschell-Steelman, III." We use the name reflected in the indictment and autopsy report.

Mr. Lawson stated that sometimes he had a "sharp pain going down [his] spine." Mr. Lawson said that Mr. Hounschell was age nine or ten when the crash occurred.

On cross-examination, Mr. Lawson testified that he did not see the Defendant drink alcohol before driving and that the Defendant behaved normally. Mr. Lawson did not recall seeing other vehicles on the road.

KCSO Officer Christopher Lougheed testified that he went to the crash site and observed one child screaming and another child nonresponsive. Officer Lougheed said that he assisted Officer Sanders with the nonresponsive child until paramedics arrived. Officer Lougheed said that he smelled alcohol on the Defendant's breath and that he transported the Defendant to the hospital to obtain a blood sample.

KCSO Officer Philip Elkins testified that he responded to the crash site, that the Defendant told Officer Elkins he had drunk one-half quart of moonshine the night before the crash, and that Officer Elkins smelled alcohol on the Defendant's breath. Officer Elkins said that he asked the Defendant for his phone number and that the Defendant had a difficult time recalling the number. Officer Elkins stated that the Defendant's speech was slurred and that the Defendant had watery and bloodshot eyes. Officer Elkins said that he determined the Defendant's driver's license had been revoked, and a copy of the Defendant's driving record showing the revoked status was received as an exhibit. Officer Elkins stated that he asked the Defendant to perform a series of field sobriety tests and that the Defendant was unable to perform the tests as instructed. Officer Elkins said that the Defendant consented to provide a blood sample.

The death certificate and autopsy report for Mr. Hounschell were received as exhibits. Officer Elkins read a portion of the report into the record. The report reflected that Mr. Hounschell was in the front passenger seat at the time of the crash, that the car had struck a telephone pole and a tree, that Mr. Hounschell was pronounced dead shortly after arriving at the hospital, and that the cause of death was blunt force trauma.

Audio recordings of jail telephone calls between the Defendant and an unidentified female were received as exhibits and were played for the jury. In the recordings, the Defendant admitted that he had an alcohol problem and that he drank alcohol the night before the crash, but he said he was not intoxicated at the time of the crash. The Defendant stated that his blood should have only shown the presence of Suboxone and marijuana.

On cross-examination, Officer Elkins testified that the Defendant told him an oncoming vehicle caused him to swerve off of the road. Officer Elkins acknowledged that field sobriety tests were not 100% accurate and that it was possible trauma from the crash affected the Defendant's ability to follow instructions during the tests. Officer Elkins stated that the tests were administered on flat ground and that he provided the

Defendant with an option to perform the tests without shoes, but the Defendant declined and wore his boots. Officer Elkins said that wearing boots may have affected the Defendant's performance. Officer Elkins stated that the Defendant's speech was slurred but admitted that his police report did not note it. Officer Elkins testified that the Defendant reported last drinking alcohol at 1:00 a.m. on the morning of the crash.

On redirect examination, Officer Elkins testified that the Defendant told him that he was not injured during the crash. Officer Elkins stated that the Defendant was "unfit to operate the vehicle safely."

KCSO Officer Lee Strzelecki testified that he escorted the Defendant to the phlebotomy lab for extraction of the blood sample. Officer Strzelecki stated that the Defendant told him that he swerved to avoid an oncoming vehicle and that he lost control. Officer Strzelecki said that the Defendant reported smoking marijuana and drinking moonshine the night before the crash. Officer Strzelecki stated that the Defendant had slurred speech, smelled of alcohol, had bloodshot eyes, and appeared to be "impaired."

Officer Strzelecki testified that he also inspected the Defendant's car after the crash. Officer Strzelecki did not find any mechanical issues that would have caused the crash.

On cross-examination, Officer Strzelecki testified that the Defendant had a minor head wound and that a nurse cleaned dried blood from the wound. Officer Strzelecki testified that a "wheel stud" had fallen off of a brake drum on the Defendant's car but said that it would not have affected the car's performance. Officer Strzelecki stated that the rear tires were worn and needed replacing but that did not cause the crash.

Tennessee Bureau of Investigation (TBI) Special Agent Michael Tiller testified that he analyzed the Defendant's blood sample and that the results revealed the Defendant's blood alcohol concentration (BAC) was 0.144%. Agent Tiller said that an average person with a BAC of 0.14% would suffer from delayed reaction times, motor coordination loss, difficulty with vision, slurred speech, difficulty walking, memory loss, and difficulty following directions. Agent Tiller stated that an average person with a BAC of 0.14% would have impaired judgment but acknowledged that it was possible to build a tolerance to alcohol if consumed often.

TBI Special Agent Melanie Carlisle testified that she performed further analysis on the Defendant's blood sample to determine whether narcotics were present. Agent Carlisle stated that the sample was positive for marijuana metabolites, which were present when a body metabolized marijuana. On cross-examination, Agent Carlisle testified that marijuana metabolites could be present up to one week after use.

-4-

KCSO Officer Timothy Belcher, a crash reconstructionist expert, testified that based on his investigation, the Defendant was driving at a "significantly greater" speed than thirty-nine miles per hour and that the speed limit was forty miles per hour. Officer Belcher said that the road was wet but that hydroplaning did not occur because no standing water was present on the road. He stated that, in his opinion, based on environmental conditions, the Defendant's state of mind, and the Defendant's level of impairment, the Defendant failed to maintain control of the car, which caused the crash.

On cross-examination, Officer Belcher testified that his summary of the investigation stated the primary cause of the crash was the Defendant's reckless operation, not intoxication. Officer Belcher said that the tire marks at the scene did not support the Defendant's claim that the Defendant swerved to miss an oncoming vehicle. On redirect examination, Officer Belcher testified that the Defendant was impaired and was unable to maintain control of the car, causing the crash.

Teresa Allison testified for the defense that the Defendant, who was her son-in-law, lived in her home. Ms. Allison said that she did not see the Defendant drink alcohol or smoke marijuana on the morning of the crash. Ms. Allison said that she had previously seen the Defendant too intoxicated to drive but that he did not appear intoxicated or have slurred speech that morning. Ms. Allison stated that she went to the crash scene with her daughter, who was the Defendant's wife, and observed Mr. Hounschell and Mr. Lawson receiving medical treatment. Ms. Allison stated that she later observed the Defendant performing field sobriety tests and that he "looked fine."

On cross-examination, Ms. Allison testified that she was unaware that the Defendant's driver's license had been revoked. Ms. Allison stated that the Defendant awoke at 10:30 a.m. on the morning of the crash.

The Defendant testified that on the night before the crash, he was home watching football with Mr. Hounschell, Mr. Lawson, and his niece. The Defendant stated that he drank most days and that he began drinking at 5:00 p.m. on the day before the crash. He said that he drank moonshine and smoked marijuana and that he stopped drinking at 1:00 a.m. He stated that he awoke the next morning at 10:30 a.m. with a hangover and that he spent the morning working in the garage and playing football with Mr. Hounschell and Mr. Lawson.

The Defendant testified that he left home with Mr. Hounschell and Mr. Lawson to go to the grocery store. The Defendant was aware he did not have a valid driver's license or insurance. The Defendant stated that he did not feel any effects from the alcohol or marijuana and that the hangover did not affect his driving.

The Defendant testified that he saw a black vehicle driving toward him and that he swerved to miss the vehicle to avoid a crash. The Defendant said that he overcorrected,

hydroplaned, and lost control of the car. The Defendant said that he lost consciousness and that Mr. Lawson woke him. The Defendant stated that Mr. Lawson was alert but that Mr. Hounschell was nonresponsive. The Defendant said that he unfastened Mr. Hounschell's seatbelt, removed him from the car, and placed him on the grass. The Defendant stated that he told Mr. Lawson to lie on the grass because Mr. Lawson's back hurt. The Defendant said that he was performing CPR on Mr. Hounschell when the police arrived. The Defendant stated that Mr. Hounschell and Mr. Lawson were taken to the hospital by ambulances.

The Defendant testified that he agreed to perform field sobriety tests and that he felt as though Officer Elkins treated him unfairly during the tests. The Defendant stated that the left side of his head was bleeding and that he told Officer Elkins he had a head injury. The Defendant said that he asked the officers for medical assistance but never received treatment. The Defendant stated that he had been crying and that it was possible his eyes were bloodshot. The Defendant said his speech was not slurred.

The Defendant testified that he was arrested for DUI and that he was taken to the hospital. The Defendant said that he gave a blood sample, that he was escorted back to the patrol car, and that an officer told him Mr. Hounschell had died. The Defendant stated that the police took him to jail.

On cross-examination, the Defendant testified that he "passed out drunk the night before" and that he did not eat breakfast on the morning of the crash. He stated that he had been an alcoholic and that he drank daily after work but said that he "maintained composure." The Defendant stated that he enjoyed smoking marijuana and that he had been receiving Suboxone from a drug treatment clinic for approximately two years.

On rebuttal, the State recalled Officer Belcher, who testified that the area in which the Defendant claimed to have encountered the oncoming vehicle was hundreds of feet from the scene of the crash.

Upon this evidence, the Defendant was convicted of vehicular homicide by intoxication, vehicular homicide by reckless conduct, vehicular assault, reckless endangerment with a deadly weapon, DUI per se, DUI, driving on a revoked license, and failure to provide evidence of financial responsibility.

After the jury rendered its verdicts, the jury considered in a bifurcated proceeding whether the Defendant had previous DUI convictions. Certified copies of the Defendant's two prior DUI convictions were received as exhibits. The Defendant's official driver's license report and history, which noted the license had been revoked due to previous DUI convictions, was also received as an exhibit.

Upon this evidence, the Defendant was convicted of aggravated vehicular homicide as a result of his two prior DUI convictions, third offense DUI per se, third offense DUI, and driving on a revoked license as a result of a second DUI conviction. This appeal followed.

## I.    Sufficiency

The Defendant contends that the evidence is insufficient to sustain his convictions for aggravated vehicular homicide because the evidence failed to show that intoxication was the proximate cause of the car crash. The Defendant also contends that the evidence is insufficient to sustain a conviction for vehicular assault because the evidence failed to show that Mr. Lawson suffered serious bodily injury as a proximate result of the Defendant's recklessness or intoxication. The State responds the evidence is sufficient. We agree with the State.

In determining the sufficiency of the evidence, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007). The State is "afforded the strongest legitimate view of the evidence and all reasonable inferences" from that evidence. *Vasques*, 221 S.W.3d at 521. The appellate courts do not "reweigh or reevaluate the evidence," and questions regarding "the credibility of witnesses [and] the weight and value to be given the evidence . . . are resolved by the trier of fact." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984).

"A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." *State v. Hall*, 976 S.W.2d 121, 140 (Tenn. 1998); *see State v. Sutton*, 166 S.W.3d 686, 691 (Tenn. 2005). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)). A conviction may be based upon circumstantial evidence alone. *See Dorantes*, 331 S.W.3d at 380-381.

### Aggravated Vehicular Homicide

Vehicular homicide is defined, in relevant part, as "the reckless killing of another by the operation of an automobile . . . as the proximate result of . . . [t]he driver's intoxication, as set forth in [the DUI statute, 55-10-401(a).]" *Id*. § 39-13-213(a)(2). "Intoxication," for purposes of DUI exists when a person is

> "[u]nder the influence of any intoxicant . . . that impairs the driver's ability
> to safely operate a motor vehicle by depriving the driver of the clearness of

mind and control of oneself that the driver would otherwise possess; [or the] blood alcohol concentration in the person's blood or breath is eight-hundredth's of one percent (0.08%) or more[.]"

*Id*. 55-10-401(1) (2013) (amended 2015). Aggravated vehicular homicide is defined, in relevant part, as vehicular homicide where a defendant has "two (2) or more prior convictions for . . . [d]riving under the influence of an intoxicant[.]" *Id*. § 39-13-218(a)(1).

The Defendant asserts that the evidence is insufficient to prove that the proximate cause of the car crash was the Defendant's intoxication. In the light most favorable to the State, the evidence shows that the Defendant's intoxication was the proximate cause of the car crash.

The Defendant testified that he began drinking at 5:00 on the evening before the crash. The Defendant admitted to officers that that he drank one-half quart of moonshine and smoked marijuana. The Defendant said that he stopped drinking at 1:00 a.m. and that he did not eat breakfast on the morning of the crash. The TBI analysis showed that the Defendant's BAC from blood collected at 1:45 p.m. was 0.144%.

Multiple officers testified that the Defendant had slurred speech and that they smelled alcohol on the Defendant's breath. Officer Elkins testified that based on his observations of the field sobriety tests, the Defendant was unfit to operate a vehicle safely. Agent Tiller testified that an average person with a BAC of 0.14% would suffer from delayed reaction times, motor coordination loss, difficulty with vision, slurred speech, difficulty walking, memory loss, difficulty following directions, and impaired judgment.

Mr. Lawson, the only witness to the crash other than the Defendant, testified that he did not observe an oncoming vehicle. Officer Strzelecki conducted a mechanical inspection and stated that mechanical issues did not cause the crash. Officer Belcher, a crash reconstructionist, testified that hydroplaning did not cause the crash because no standing water was on the road and that no tire marks showed that the Defendant swerved to miss an oncoming vehicle. Officer Belcher stated that the area in which the Defendant claimed to have encountered another vehicle was hundreds of feet from the crash site. Officer Belcher said that the Defendant was impaired and was unable to maintain control of his car, which caused the crash. In the bifurcated portion of the trial, copies of the Defendant's two prior DUI convictions were received as exhibits. We conclude that sufficient evidence exists to show that the Defendant's intoxication was the proximate cause of the car crash and to support the Defendant's aggravated vehicular homicide conviction. The Defendant is not entitled to relief on this basis.

## Vehicular Assault

The Defendant argues that Mr. Lawson did not suffer "serious bodily injury" as defined in Tennessee Code Annotated section 39-11-106(a)(34) (2014), in that Mr. Lawson did not suffer life-threatening injuries, that he was not unconscious, and that he did not suffer obvious disfigurement. Furthermore, the Defendant argues that because Mr. Lawson was older than age eight at the time of the car crash, the child broken-bone provision of the serious bodily injury definition did not apply.

An individual commits vehicular assault when his conduct "as the proximate result of the person's intoxication as set forth in § 55-10-401, recklessly causes serious bodily injury to another person by the operation of a motor vehicle." *Id*. § 39-13-106(a). "Serious bodily injury means bodily injury that involves . . . [a] broken bone of a child who is twelve (12) years of age or less[.]" *Id*. § 39-13-106(a)(34)(C), (F).

In the light most favorable to the State, the evidence is sufficient to sustain the Defendant's conviction for vehicular assault. As previously established, the crash was the proximate result of the Defendant's intoxication. Mr. Lawson testified that on September 12, 2016, he was age twelve. The car crash occurred on November 23, 2014. At the time of the crash, evidence shows that Mr. Lawson was under the age of twelve and that he suffered three spinal fractures. These injuries, by definition, were serious bodily injuries. *Id*. The evidence is sufficient to support the Defendant's vehicular assault conviction. The Defendant is not entitled to relief on this issue.

## II.    Double Jeopardy

## Vehicular Assault and Reckless Endangerment with a Deadly Weapon

The Defendant contends that his vehicular assault and reckless endangerment with a deadly weapon convictions violate principles of double jeopardy. He argues that elements from both convictions are essentially the same and that the convictions must merge pursuant to *Blockburger*, which our supreme court adopted in *State v. Watkins*, 362 S.W.3d 530, 541-42 (Tenn. 2012), for purposes of double jeopardy violations. The State responds that the Defendant has waived appellate review because this issue was not raised in his motion for a new trial.

Rule 3(e) of the Tennessee Rules of Appellate Procedure provides, in part:

[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically

stated in a motion for a new trial; otherwise such issues will be treated as waived.

The record reflects that the Defendant failed to raise this issue in his motion for a new trial and that he raised this issue for the first time on appeal. Therefore, our review is limited to consideration of whether plain error exists.

Five factors are relevant

when deciding whether an error constitutes "plain error" in the absence of an objection at trial: "(a) the record must clearly establish what occurred in the trial court; (b) a clear and unequivocal rule of law must have been breached; (c) a substantial right of the accused must have been adversely affected; (d) the accused did not waive the issue for tactical reasons; and (e) consideration of the error is 'necessary to do substantial justice.'"

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)). All five factors must exist in order for plain error to be recognized. *Id.* at 283. "[C]omplete consideration of all the factors is not necessary when it is clear from the record that at least one of the factors cannot be established." *Id.* In order for this court to reverse the judgment of a trial court, the error must be "of such a great magnitude that it probably changed the outcome of the trial." *Id.*; *Adkisson*, 899 S.W.2d at 642.

The record clearly establishes what occurred in the trial court. *See Adkisson*, 899 S.W.2d 641-42. The record does not reflect that the Defendant waived the issue for tactical purposes. *See id.* Resolution of whether he has established the remaining prerequisites for plain error relief is more complex. *See id.*

The Fifth Amendment of United States Constitution and Article I, section 10 of the Tennessee Constitution provide that no person should be put "in jeopardy of life or limb" twice for the same offense. U.S. Const. amend. V, Tenn. Const. art. I, § 10. Double jeopardy principles proscribe multiple punishments for the same conduct. *See Watkins*, 362 S.W.3d at 541-42.

In *Watkins*, our supreme court abandoned the analysis provided previously in *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), and adopted the "same elements" analysis delineated by the United States Supreme Court in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). Therefore, whether dual convictions violate double jeopardy principles requires a determination of "whether the convictions arise from the same act or transaction." *Watkins*, 362 S.W.3d at 557. If the convictions arise from the same act or transaction, the second inquiry is whether the elements of the offenses are the same or whether one offense is a lesser included offense of the other. *Id.* If the elements are the

same or one offense is a lesser included offense of the other, dual convictions violate double jeopardy principles. *Id*. Appellate courts "will presume that multiple convictions are not intended by the General Assembly" when the elements of the offenses are the same or when one offense is a lesser included offense of the other. *Id*.

As previously defined, vehicular assault requires the State to prove that the Defendant was intoxicated and that the proximate result of his intoxication caused seriously bodily injury to another by the operation of a motor vehicle. *See* T.C.A. § 39-13-106(a). A person commits reckless endangerment with a deadly weapon when one "recklessly engages in conduct that places or may place another person in imminent danger of death or serious bodily injury . . . committed with a deadly weapon." *See id*. § 39-13-103(a), (b)(2). A "deadly weapon" is defined as "a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *See id*. § 39-11-106(5)(A), (B) (2014). This court has held that a vehicle may be used as a deadly weapon. *See State v. Tate*, 912 S.W.2d 785 (Tenn. Crim. App. 1995).

The threshold inquiry pursuant to *Blockburger* and *Watkins* is whether the Defendant's convictions for vehicular assault and reckless endangerment with a deadly weapon arise from the same act or transaction. The record reflects that both convictions stem from the car crash that occurred on November 23, 2014. Therefore, the threshold inquiry is satisfied.

However, vehicular assault contains several elements not contained in reckless endangerment with a deadly weapon. Vehicular assault requires both intoxication and reckless conduct, while reckless endangerment with a deadly weapon requires only recklessness. Vehicular assault also requires that the intoxication cause serious bodily injury to another person. Reckless endangerment with a deadly weapon, on the other hand, does not require serious bodily injury, but merely that an individual or individuals are placed in danger of death or serious bodily injury. Finally, vehicular assault requires the use of a vehicle, but reckless endangerment with a deadly weapon does not require that the deadly weapon be a vehicle.

Our review of the statutory elements of the offenses does not reveal that the Tennessee General Assembly intended to prohibit convictions for both offenses nor is one a lesser included offense of the other for purposes of the *Blockburger* test. *See State v. Cross*, 362 S.W.3d 512 (Tenn. 2012); *see also Watkins,* 362 S.W.3d at 557. Therefore, the Defendant has now shown that a clear and unequivocal rule of law has been breached. *See Adkisson*, 899 S.W.2d at 282. Likewise, he has failed to establish that a substantial right has been adversely affected and that consideration of the alleged error is necessary to do substantial justice. *See id*. No plain error exists, and the Defendant is not entitled to relief on this basis.

## Vehicular Assault and Driving under the Influence

Although not raised on appeal by the parties, as a matter of plain error, we conclude that dual convictions for vehicular assault and DUI violate double jeopardy principles. This court has previously held that DUI is a lesser included offense of vehicular assault and that "for double jeopardy purposes, a person cannot be punished separately for DUI and vehicular assault for one act of driving under the influence that causes serious bodily injury." *State v. Rhodes,* 917 S.W.2d 708, 713 (Tenn. Crim. App. 1995). As such, the Defendant's convictions for DUI should merge with the vehicular assault conviction. We remand for the entry of corrected judgments reflecting merger of these offenses.

## III.    Sentencing

The Defendant contends that his thirty-two-year sentence is excessive. The Defendant argues that he did not act intentionally or maliciously and that he is genuinely remorseful. The State responds that the trial court did not abuse its discretion. We agree with the State.

At the sentencing hearing, the presentence report was received as an exhibit and reflected that the Defendant had convictions for aggravated assault, two counts of aggravated burglary, ten counts of theft-related offenses, four counts of evading arrest, three counts of drug-related offenses, two counts of DUI, two counts of vandalism, public intoxication, driving on a suspended license, and underage possession of alcohol. The Defendant's convictions date to 1999, when the Defendant was found delinquent as a juvenile for a burglary-related offense. The report reflected that the Defendant had multiple probation violations and a parole violation.

The presentence report reflected that the Defendant was age thirty-five and had four children, including Mr. Hounschell. The report reflected that the Defendant had steady employment and that he had earned a high school diploma. He reported that he suffered from depression, bipolar disorder, and paranoia. He began using marijuana regularly at age fourteen, although he no longer used it. He reported first using alcohol at age five and regular use beginning at age sixteen. He reported that he drank one-half quart of moonshine or a six-pack of beer daily but that he had been sober for five years.

KCSO Officer Thomas Walker testified that the Defendant admitted to being an Aryan Brotherhood gang member. Officer Walker stated that the Defendant had two distinctive tattoos signifying the gang.

The Defendant expressed in an allocution his remorse and stated that he had lost his family due to his actions. The Defendant maintained that he was not intoxicated at the time of the crash.

The trial court considered the evidence presented at the trial and the sentencing hearing, the presentence report, the arguments made by counsel, and the Defendant's allocution. The court found that mitigating factor (13) applied because the Defendant was remorseful for his actions. *See* T.C.A. § 40-35-113(13) (2014) ("Any other factor consistent with the purposes of this chapter."). The court also found that the Defendant had a history of steady employment. *Id*.

The trial court found that the Defendant had an extensive criminal history. *See id*. § 40-35-114(1) (2014) (amended 2015, 2016, 2017) ("The defendant has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range[.]"). The court found that enhancement factor (8) applied because the Defendant had multiple probation violations and had "failed to comply with conditions . . . throughout most of his criminal history." *See id*. § 40-35-114(8) ("The defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community[.]") The court found that enhancement factor (11) applied because the Defendant had previously been convicted of aggravated assault, resulting in death or serious bodily injury and that the present offenses had resulted in a death. *See id*. § 40-35-114(11) ("The felony resulted in death or serious bodily injury, or involved the threat of death or serious bodily injury, to another person, and the defendant has previously been convicted of a felony that resulted in death or serious bodily injury[.]") The court found that enhancement factor (16) applied because the Defendant had a juvenile burglary adjudication. *See id*. § 40-35-114(16) ("The defendant was adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult.")

The trial court found that the Defendant was a Range I, standard offender regarding the aggravated vehicular homicide conviction. The court merged the convictions for vehicular homicide by intoxication and vehicular homicide by reckless conduct with the aggravated vehicular homicide conviction and sentenced the Defendant to twenty years' confinement. The court found that the Defendant was a Range III, career offender regarding the vehicular assault conviction, sentenced the Defendant to twelve years' confinement, and ordered the sentence be served consecutively with the aggravated vehicular homicide sentence. The court found that ordering consecutive sentences was appropriate based on the Defendant's extensive criminal history.

The trial court found that the Defendant was a Range III, career offender regarding the reckless endangerment with a deadly weapon conviction, sentenced the Defendant to six years' confinement, and ordered the sentence be served concurrently with the aggravated vehicular homicide sentence. The court merged the Defendant's third offense DUI per se and third offense DUI convictions. The court sentenced the Defendant to eleven months, twenty-nine days' confinement, and ordered the sentence be served concurrently with the aggravated vehicular homicide sentence. The court ordered

concurrent service for the remaining convictions, for an effective thirty-two-year sentence.

This court reviews challenges to the length of a sentence within the appropriate sentence range "under an abuse of discretion standard with a 'presumption of reasonableness.'" *State v. Bise*, 380 S.W.3d 682, 708 (Tenn. 2012). A trial court must consider any evidence received at the trial and sentencing hearing, the presentence report, the principles of sentencing, counsel's arguments as to sentencing alternatives, the nature and characteristics of the criminal conduct, any mitigating or statutory enhancement factors, statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee, any statement that the defendant made on his own behalf, and the potential for rehabilitation or treatment. *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991) (citing T.C.A. §§ 40-35-103 (2014), -210 (2014); *State v. Moss*, 727 S.W.2d 229, 236 (Tenn. 1986); *State v. Taylor*, 744 S.W.2d 919 (Tenn. Crim. App. 1987)); *see* T.C.A. § 40-35-102 (2014).

Likewise, a trial court's application of enhancement and mitigating factors is reviewed for an abuse of discretion with "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 706-07. "[A] trial court's misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Id.* at 706. "So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed . . . within the appropriate range" will be upheld on appeal. *Id.*

The abuse of discretion with a presumption of reasonableness standard also applies to the imposition of consecutive sentences. *State v. Pollard*, 432 S.W.3d 851, 859 (Tenn. 2013). A trial court has broad discretion in determining whether to impose consecutive service. *Id*. A trial court may impose consecutive sentencing if it finds by a preponderance of the evidence that one criterion is satisfied in Tennessee Code Annotated section 40-35-115(b)(1)-(7) (2014). In determining whether to impose consecutive sentences, though, a trial court must ensure the sentence is "no greater than that deserved for the offense committed," and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." T.C.A. § 40-35-103(2), (4); *see State v. Desirey*, 909 S.W.2d 20, 33 (Tenn. Crim. App. 1995).

Based on the record, we conclude that the trial court did not abuse its discretion in ordering consecutive sentences. The trial court considered the appropriate purposes and principles of sentencing. The court may order consecutive sentences if the court finds by a preponderance of evidence that the "defendant is an offender whose record of criminal activity is extensive." T.C.A § 40-35-115(b)(2) (2014). The record supports the court's findings that the Defendant has an extensive criminal record. The Defendant had more

than twenty-five previous convictions, three of which were crimes of violence.  The Defendant is not entitled to relief on this basis.

In consideration of the foregoing and the record as a whole, we affirm the Defendant's convictions.  However, because double jeopardy principles require merger of the Defendant's convictions for third offense DUI per se and third offense DUI with his vehicular assault conviction, we remand the case to the trial court for the entry of corrected judgments reflecting the merger.  The judgments of the trial court are affirmed in all other respects.

_____
ROBERT H. MONTGOMERY, JR., JUDGE